**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| YHAN RIVERA,  :  |  |
| :  |  |
| Plaintiff,  :  | Civil No. 06-5083 (RBK) |
| :  |  |
| v.  :  |  |
| :  |  |
| JOHN NASH, B.O.P.  :  | **OPINION** |
| :  |  |
| Defendants.  :  |  |

**APPEARANCES**:

  YAHN RIVERA, #80662-054, Plaintiff pro se
  F.C.I. McKean
  P.O. Box 8000
  Bradford, PA  16701

**KUGLER**, District Judge

  Plaintiff Yhan Rivera, a federal prisoner, seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915. The Court will grant Plaintiff's application to proceed in forma pauperis and dismiss the Complaint for failure to state a claim upon which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

**I.   BACKGROUND**

  Plaintiff asserts violations of his constitutional rights by John Nash, the Warden of the Federal Correctional Institution at Fort Dix ("FCI Fort Dix"), and the Bureau of Prisons ("BOP"), under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), arising from his incarceration at

FCI Fort Dix.  Plaintiff asserts that in or about April 2005 Corrections Officer Scarborough unnecessarily harassed, handcuffed and searched Plaintiff.  Plaintiff alleges that he filed administrative remedies regarding the incident on April 10, 2005, and May 16, 2005, but he received no verification that officials properly investigated the incident.  Plaintiff asserts that,

> [t]he administration in response to Rivera's use of the Administrative Remedy process instituted by Congress placed the Plaintiff in administrative detention for no reason from May 19, 2005 until September 2, 2005. Under the guise of his own protection.  From what?  Mr. Rivera was the subject of cruel and unusual punishment, Rivera was not allowed due process under the Fifth Amendment and was the subject of an Eighth Amendment violation.  The Plaintiff did nothing but utilize the administrative remedy process and was retaliated against for so doing against the Fifth Amendment.

(Compl. at p. 2.)  Plaintiff seeks damages for violation of his constitutional rights.

## II.  STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua

sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

A pro se complaint is held to less stringent standards than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir. 2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).  Under the notice pleading standard, a plaintiff need not set out in detail the facts upon which his claim for relief is based, but need only provide a statement sufficient to put the opposing party on notice of his claim.  See, e.g., Foulk v. Donjon Marine Co., 144 F.3d 252, 256 (3d Cir. 1998).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction.  See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884).  "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001).  The Supreme Court found an implied damages remedy available under the Fourth Amendment.  Bivens, 403 U.S. at 397.  The Supreme Court has recognized an implied damages remedy under the Due Process clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228 (1979), and the Cruel and Unusual Punishment clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14 (1980).  To state a claim for damages under Bivens, a

4

plaintiff must show that federal officers violated his constitutional rights.  See Malesko, 534 U.S. at 66.

## A.  Search & Handcuffs

Plaintiff asserts that Corrections Officer Scarborough harassed and unnecessarily searched and handcuffed him.  The Court construes these allegations as a potential Fourth Amendment claim.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself."  Id. at 618 (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose.  Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy."  Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth
> Amendment terms is fundamentally incompatible
> with the close and continual surveillance of
> inmates and their cells required to ensure
> institutional security and internal order.
> We are satisfied that society would insist
> that the prisoner's expectation of privacy
> always yield to what must be considered the
> paramount interest in institutional security.
> We believe that it is accepted by our society
> that loss of freedom of choice and privacy
> are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted); see also Bell v. Wolfish, 441 U.S. 520, 558-560 (1979) (body cavity searches of pretrial detainees and convicted prisoners do not violate the Fourth Amendment). Given Hudson, this Court will dismiss the claims regarding the search and handcuffing of Plaintiff by Officer Scarborough.

B.  Segregation

   Plaintiff contends that his confinement in segregation from May 19, 2005, through September 2, 2005, violates due process and the Eighth Amendment. To establish a conditions of confinement claim under the Eighth Amendment, an inmate must show objectively that the alleged deprivations are sufficiently serious. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Conditions are sufficiently serious under this objective element when they deny the inmate one identifiable basic human need or deprive a prisoner of the minimal civilized measure of life's necessities. See Wilson v. Seiter, 501 U.S. 294, 305 (1991). Plaintiff's Eighth Amendment claim fails because "[s]egregated detention is

not cruel and unusual punishment per se, as long as the conditions of confinement are not foul, inhuman or totally without penological justification," Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and Plaintiff does not assert that the conditions in segregation were foul or inhuman.

Nor does Plaintiff's segregated confinement for four months violate his Fifth Amendment right to due process of law.  The Due Process Clause of the Fifth Amendment provides:  "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  A person is entitled to due process of law only when government action deprives him or her of life, liberty or property.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979).  To analyze a due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process.  See Fuentes v. Shevin, 407 U.S. 67 (1972).  Only if the answer is yes is the second step, i.e., determining what process is due, necessary.  See Morrissey v. Brewer, 408 U.S. 471 (1972).

Liberty interests protected by the Due Process Clause of the Fifth Amendment may arise under the Due Process Clause itself or may be created by mandatory language in statutes or regulations. Cf. Sandin v. Conner, 515 U.S. 472, 483-484 (1995) (state created liberty interest); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir.

7

2002) (same).  But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin at 478.  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Vitek v. Jones, 445 U.S. 480, 493 (1980).  Convicted inmates have no liberty interest arising by force of the Due Process Clause itself in remaining in the general population.  See Olim v. Wakinekona, 461 U.S. 238, 248 n.9 (1983); Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242; Meachum v. Fano, 427 U.S. 215 (1976); Torres, 292 F.3d at 150.

The government may also create a protected liberty interest by the use of mandatory language in a statute or regulation.  Cf. Sandin, 515 U.S. at 483-84.  In Sandin v. Conner, the United States Supreme Court announced that "mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Torres, 292 F.3d at 151 (quoting Sandin, 515 U.S. at 484).  Federal courts have generally found that, "[w]hile

8

Sandin addressed state-created liberty interests under the Fourteenth Amendment, its methodology applies equally to Fifth Amendment claims involving federal prison regulations." Crowder v. True, 74 F.3d 812, 814 (7th Cir. 1996); see also Tellier v. Fields, 280 F.3d 69, 79-83 (2nd Cir. 2000); Babcock v. White, 102 F.3d 267, 274 (7th Cir. 1996). Thus, Plaintiff was entitled to due process of law only if he can point to mandatory language in a federal statute or regulation and his confinement in SHU for four months imposed an "atypical and significant hardship" in relation to the ordinary incidents of federal prison life. Sandin, 515 U.S. at 484.

Plaintiff's Due Process claim fails because his four-month detention did not impose an "atypical and significant hardship" in relation to the ordinary incidents of prison life. The United States Court of Appeals for the Third Circuit has held that "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002). Compare Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in avoiding potentially indefinite segregated confinement in Security Threat Group Management Unit); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (Pennsylvania prison

9

officials did not deprive Griffin of a protected liberty interest by confining him in administrative segregation as a suspect for 15 months pending completion of an investigation of the rape and beating of a female corrections officer), with Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (Pennsylvania prisoner was deprived of a state created liberty interest where, for eight years, he was in solitary confinement and deprived of all human contact except contact with corrections officers).

Given the Third Circuit's decisions applying Sandin, this Court finds that Plaintiff's confinement in segregation for four months did not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.  Accordingly, he was not deprived of a liberty interest and the Complaint does not state a due process claim.

C.  Retaliation

Plaintiff asserts that his segregated confinement for four months constitutes actionable retaliation because he was aware of no reason for his placement and because it occurred three days after he filed his second administrative remedy against Scarborough.  The Court construes these allegations as a potential First Amendment retaliation claim.

To state a First Amendment retaliation claim, Plaintiff must show:  (1) he engaged in protected First Amendment activity; (2) adverse action was taken; and (3) the protected activity was a

substantial motivating factor for the adverse action.  See Fultz v. Dunn, 165 F.3d 215, 218 (3d Cir. 1998); Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371 (3d Cir. 1981); cf. Crawford-El v. Britton, 523 U.S. 574 (1998).

Plaintiff's allegations may satisfy the first two prongs, as filing an administrative remedy is protected activity and placement in segregated confinement constitutes adverse action.  However, without more, the facts set forth in the Complaint do not support an inference that Plaintiff's administrative remedy was a substantial motivating factor for his placement in segregation.  Nothing alleged by Plaintiff indicates that Officer Scarborough, who may have had a retaliatory motive, orchestrated Plaintiff's placement.  And nothing indicates that Warden Nash was aware of Plaintiff's administrative remedy or involved in his placement in segregation.  Even construing all reasonable inferences in Plaintiff's favor, Plaintiff's allegations do not link his placement in segregation with a retaliatory motive of a named Defendant.[1]  Under these circumstances, the Court is constrained to dismiss the retaliation claim for failure to state a claim upon which relief may be granted.

---

[1] The only other named defendant is the BOP.  However, the BOP is not a proper party because a Bivens claim is not cognizable against a federal agency.  See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994).

11

## **IV.   CONCLUSION**

The Court grants Plaintiff's application to proceed in forma pauperis and dismisses the Complaint.


                                        s/Robert B. Kugler
                                        **ROBERT B. KUGLER, U.S.D.J.**

Dated:     April 18, 2007     , 2007